## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| CONTINENTAL MOTORS, INC., ) | |
| Plaintiff, ) | |
| v. ) | Civil Case No. 5:17-623 |
| TYRONE STOLLER et al., ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION</u>

The *Wall Street Journal*'s Deal Journal famously tracks the "winners" and "losers" in corporate acquisitions. But in this acquisition-gone-awry, the real winners are the lawyers.

Nonparty Danbury Aerospace is the parent corporation for six aftermarket aircraft engine manufacturers and six real estate holding companies. Jointly held by members of the Garvens family, Danbury is led by Chairman Jeffrey Garvens and President Ty Stoller. In 2015, plaintiff Continental Motors bought almost all of Danbury's assets and assumed $1 million of its liabilities in exchange for $16 million, $3.2 million of which was held in escrow. Continental further agreed to lease Danbury's six-building complex. Together, these two deals spawned five different lawsuits (at least).

*The first two*: A year after the acquisition, two companies sued Danbury over intellectual property transferred to Continental in the sale. So Continental intervened; Danbury cross-claimed against Continental and filed a separate action against the two companies, who counterclaimed and filed third-party claims against Continental. As part of a global settlement, Continental and Danbury took $389,000 and $634,000, respectively, from the escrow accounts. The settlement

agreement noted the remaining escrow funds could be released to Danbury, except for roughly $570,000 Continental sought to recoup for covering Danbury liabilities exceeding the $1 million cap.

*Third*: Several months after the settlement, the $570,000 remained disputed. So when Continental told Danbury it planned to discard financial records transferred with the sale, Danbury sued in state court to block their destruction. Continental counterclaimed for the $570,000. But Danbury won in a knockout: the state court ordered Continental to preserve the financial records, directed the escrow holder to give Danbury the $570,000, and granted Danbury nearly $155,000 in attorney's fees.

*Fourth*: While the second case was pending, Danbury's real estate subsidiaries sued Continental for breaching the building leases. Continental removed the case to this Court, which ruled for Danbury and awarded it over $181,500 in damages and over $240,000 in fees and costs.

*Fifth*, the current case: Minutes after removing Danbury's breach-of-contract case, Continental filed this five-count missive. Though Continental did not explicitly sue Danbury, it named three groups of related defendants: (a) Danbury's directors (Stoller and Garvens); (b) Danbury's shareholders (various Garvens family members and related corporate trusts); and Danbury's real estate subsidiaries. Count one is the mirror image of Danbury's breach-of-contract case, asking the Court to clear Continental of breaching the rental agreements. The remaining counts rehash Continental's claim to the $570,000. Count two alleges the directors misrepresented Continental's ability to recoup excess liabilities, seeking exemplary damages for fraudulent inducement. Count three tries rescinding the $1 million cap to allow Continental to recover the $570,000. In the alternative, count four alleges unjust enrichment and seeks $1

2

million in damages—the amount Continental paid in exchange for the ability to recover excess liabilities. Finally, count five raises a related state-law moneys-had-and-received claim.

Four motions await decision. *First*, the real estate defendants move to dismiss count one given their own breach-of-contract case. But Continental has since voluntarily dismissed count one, so that motion is moot. *Second*, the director and shareholder defendants move to dismiss counts two through five under Rule 12(b)(7) for failure to join Danbury. *Third*, and alternatively, the director and shareholder defendants move for summary judgment on counts two through five, arguing the state court judgment awarding Danbury the $570,000 precludes those claims. *Fourth*, the shareholder defendants move to sanction away claims against them, arguing the asset purchase agreement inoculates them from liability for the directors' alleged misrepresentation. But because the Court concludes the state court judgment precludes Continental's claims, it will grant the director and shareholder defendants' summary judgment motion and dismiss the remaining dispositive motions as moot. And because the Court concludes Continental did not commit sanctionable conduct, it will deny the shareholder defendants' sanctions motion.

I

Claim preclusion prevents parties from litigating issues they could have raised in a prior related action. Like its sibling issue preclusion, claim preclusion "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). And because the Court must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so," claim preclusion also "promote[s] the comity between state and federal courts that has been recognized as the bulwark of the federal system." *Id.* at 95-96 (citing 28 U.S.C. § 1738). Here, the director and shareholder

defendants urge the Court to give preclusive effect to the state court judgment awarding Danbury the $570,000.

At the threshold, the parties dispute whether Texas's claim preclusion rule or the federal common-law standard applies. Fifth Circuit law is clear: "[S]tate law governs whether a state court judgment bars a subsequent federal diversity action." *Cleckner v. Republic Van & Storage Co., Inc.*, 556 F.2d 766, 768 (5th Cir. 1977). So the Court follows the Texas Supreme Court's approach.

Texas law "bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, *might have been tried* in a former action as well as those that were actually tried." *Hogue v. Royse City*, 939 F.2d 1249, 1252 (5th Cir. 1991) (applying Texas law). To offensively wield this shield, the director and shareholder defendants "must prove (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Continental concedes the first element but argues that the director and shareholder defendants lack privity with Danbury and that it could not have disputed the $570,000 in state court. Both arguments fail.

For one, the director and shareholder defendants are in privity with Danbury since they "share an identity of interests in the basic legal right that is the subject of [this] litigation": who gets the $570,000. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). Although Continental correctly notes "[a] corporation is an entity separate and apart from its stockholders"

4

under Texas corporate law, Pl.'s Resp. 8, ECF No. 55, Continental fails to recognize Danbury

"can be in privity" with its directors and shareholders "in [multiple] ways," including when one

"represent[s]" the other's "interests" in a prior "action." *Amstadt*, 919 S.W.2d at 653. In motion-

to-dismiss briefing, Continental conceded that "as the ultimate source and beneficiary of the

[escrow] funds," the director and shareholder defendants share Danbury's interest in the

$570,000—indeed, that's Continental's whole argument for why Danbury isn't a necessary

party. *See* Pl.'s Resp. 4-5, ECF No. 48. Now, the Court holds the converse is also true: Danbury

adequately represented the director and shareholder defendants' interests in the state court suit

over the $570,000. And thus the director and shareholder defendants share privity with Danbury.

Not for nothing, that result comports with numerous Texas cases holding "a judgment against a

corporation is *res judicata* in a subsequent suit against a stockholder." *Paine v. Sealy*, 956

S.W.2d 803, 807 (Tex. App. 1997); *accord, e.g.*, *Western Inn Corp. v. Heyl*, 452 S.W. 2d 752,

760 (Tex. Civ. App. 1970).

Moreover, Continental's prior attempts to recover the $570,000 stymie its current effort.

To decide whether claim preclusion applies, Texas courts analyze "the factual matters that make

up the gist of the [prior] complaint, without regard to the form of action." *Barr v. Resolution

Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630 (Tex. 1992). "If the second plaintiffs

seek to relitigate the matter which was the subject of the earlier litigation," claim preclusion

"bars the suit even if the second plaintiffs do not allege causes of action identical to those

asserted by the first." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996). So too

here: after losing the $570,000 in state court, Continental seeks a mulligan in federal court. But

because a court of competent jurisdiction gave the $570,000 to Danbury in a case where Danbury

represented the current director and shareholder defendants' interest, Continental cannot take a second swing.

## II

A brief word on the shareholder defendants' sanctions motion. Continental connects the shareholder defendants to the conduct underpinning counts three through five by "imputing" the director defendants' alleged misrepresentations. The shareholder defendants argue that imputation is improper because the purchase agreement requires knowledge to sustain a claim of fraud against a shareholder while expressly disclaiming the shareholders "d[id] not have material knowledge of" Danbury's operations. ECF No. 62-2 at 38. But the Court finds it was not objectively improper to name the shareholders as defendants for counts three through five. Those counts are equitable claims (rescission, unjust enrichment, and moneys-had-and-received); count two is the only count explicitly alleging fraud, and Continental does not name the shareholder defendants in count two. Moreover, sufficient evidence connects the shareholder defendants to the director defendants' conduct: after executing the purchase agreement, the shareholder defendants signed an addendum appointing Stoller (one of the director defendants) as their agent. So the Court holds Continental did not commit sanctionable conduct by naming the shareholder defendants in counts three through five.

## III

For these reasons, the Court will grant the director and shareholder defendants' motion for summary judgment, resolving counts two through five. The Court will also deny the shareholder defendants' motion for sanctions. And since Continental voluntarily dismissed count

one against the real estate subsidiaries, no claims remain pending. So the Court will dismiss all other pending motions as moot and terminate the case. A separate order follows.

August 23, 2019

Royce C. Lamberth
United States District Judge